# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

VALDONIA RIDDICK, Propria Persona, 'Real
Party In Interest' C/O U.S. MARSHAL ACCOUNT
#34156.018 FEDERAL CORRECTIONAL
INSTUTION,

Petitioner,

-vs-                                                    Case No.  2:07-cv-499-FtM-33SPC

JORGE PASTRANA, d/b/a WARDEN, FCI,
MIAMI, ALBERTO GONZALES, d/b/a
ATTORNEY GENERAL OF THE UNITED
STATES, GEORGE W. BUSH, d/b/a 43 rd
PRESIDENT OF THE UNITED STATES, et al.,

Respondent.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence, pursuant to 28 U.S.C. § 2255 (Doc. #1) filed on July 30, 2008.

<em>Procedural History</em>

On July 30, 2007, the Petitioner, Valdonia O. Riddick,  filed his Motion to Vacate, Set Aside,

or Correct Sentence,  pursuant to 28 U.S.C. § 2255, alleging the Petitioner was never informed by

his Counsel of his "right to challenge the Court's jurisdiction over his individual persona or that

Petitioner's appearance was supposed to be voluntary and based upon a knowing and intelligent

agreement".  (Doc. #6, ¶ 6a). On October 5, 2007, the Government filed a Response to the Motion

(Doc. #5).   On October 29, 2007, the District Court referred the Petitioner's Motion to the undersigned for the purposes of holding an evidentiary hearing and proposing a Report and Recommendation regarding disposition of the Motion.   On November 7, 2007, the Petitioner moved the Court to proceed *in forma pauperis* and for the appointment of Counsel. (Doc. #11).   On December 14, 2007, the Court granted the Petitioner's request and directed the Clerk to appoint Counsel. (Doc. #14).   On December 18, 2007, Ellis Rexwood Curry, IV., Esq., was appointed to represent the Petitioner.

On February 5, 2008, an Evidentiary hearing was scheduled for March 11, 2008 at 9:30 A.M. before the undersigned.   However, on March 7, 2008, the Government moved to continue the hearing due to scheduling conflicts and the unavailability of witness, Abe Bailey, former Counsel for the Petitioner.  (Doc. #19, ¶ 2-3).   The Court granted the Government's request for good cause shown and re-scheduled the hearing for April 1, 2008 at 9:30 A.M.

On April 1, 2008, the parties convened to conduct the scheduled evidentiary hearing. However, the Government failed to subpoena Attorney Bailey, therefore, he was not present for the hearing.   The Court was compelled to reschedule the hearing for a second time in an effort to have all parties and witnesses available in order to make a determination on the merits.  (Doc. # 22).   The hearing was rescheduled for April 4, 2008.

An evidentiary hearing was held before the Honorable Sheri Polster Chappell, United States Magistrate Judge on April 4, 2008.   The Government  was  represented by Assistant United States Attorney Jesus Casas ("AUSA Casas"), the Defendant was present and represented by court appointed Attorney Ellis Rexwood Curry, IV, Esq.   At the hearing, the Respondent, the United States of America called Attorney Abe Bailey, Esq. ("Attorney Bailey") and Kathryn Dellane

-2-

Mangone ("Spec. Agt. Mangone"), Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement (ICE) as witnesses. The Petitioner testified to his recollection of the plea colloquy and the sentencing hearing as well as the events that transpired in regard to an appeal. The Petitioner introduced two letters: one from AUSA Casas to Attorney Bailey (Petitioner's Exhibit #1), and another purported to be from the Petitioner to Attorney Bailey (Petitioner's Exhibit #2). The transcript of the plea colloquy (Doc. #105) and the sentencing hearing (Doc. #175) were also noted for the record.[1]

**Abe Bailey:** (Tr. 5-47)

_____Abe Bailey has been a practicing attorney since June 15, 1985. (Tr. 6:9-12). His area of practice is predominantly federal and state criminal defense. (Tr. 6:13-14). He has handled over 360 cases in federal court. (Tr. 38:1-4).

Attorney Bailey recalls becoming involved in the case regarding Valdonia Riddick ("Petitioner", "Riddick") in 2006. (Tr. 6:17-23). He recalls having a conversation with the Petitioner regarding a superseding indictment charging him with federal drug offenses. (Tr. 6:25, 7:1-3). Specifically, he met with the Petitioner and explained to him the nature of the charges and the potential penalties as well as outlining what he believed the guideline range to be if Riddick were convicted of the offense. (Tr. 7:6-12). On several occasions he discussed the possibility of cooperation with the United States. (Tr. 7:13-18).

At the initial meeting with his client, Attorney Bailey recalls discussing the issue of cooperation but Riddick denied any involvement in the case, claiming he was set up. (Tr. 8:4-13).

---

[1] Documents #105 and #175 are filings located in 2:06-cr-33-JES-SPC United States of America vs. Valdonia O. Riddick.

After receiving discovery, Attorney Bailey and his investigator returned to the jail to play some of the audiotapes and videotapes for Riddick. (Tr. 8:14-17). After Riddick saw the evidence against him, he indicated that "[l]ook, we don't want to go to trial in this case. I – you know, we want to plead. I want to get this case resolved. We don't want to go to trial." (Tr. 8:17-20). In his opinion, the videotape was conclusive. Attorney Bailey indicated Riddick wanted to resolve the case. (Tr. 8:20-21).

Riddick did not indicate any willingness to cooperate with the United States in furtherance of the investigation. (Tr. 8:22-24). However, based upon plea discussions with the Government, Attorney Bailey arranged to have an investigator drive to the Wauchula County Jail where Riddick was being housed pre-trial in an effort to see if Riddick would cooperate. (Tr. 9:3-14). Riddick refused to meet with the agent. (Tr. 9:17). At a later date, however, Riddick did provide a statement to an agent in the hopes of qualifying for the safety valve provisions. (Tr. 9:18-21).

Ultimately, Riddick pled in open court[2] to the charge against him and raised the issue of acceptance of responsibility arguing minimal role. (Tr. 9:25, 10:1-2). Attorney Bailey asked for a downward departure[3]. (Tr. 10:1-3).

Attorney Bailey recalls that on the day of sentencing, he met with Riddick around 9:00 or 9:30 a.m. (Tr. 10:7-9). At the sentencing hearing, because the sentencing Judge had a question regarding the amount of narcotics Riddick was responsible for bringing into the United States, the court

---

[2]The transcript of the plea colloquy can be found at Doc. #105 in 2:06-cr-33-JES-SPC United States of America vs. Valdonia O. Riddick.

[3]The transcript of the sentencing haring can be found at Doc. #175 in 2:06-cr-33-JES-SPC United States of America vs. Valdonia O. Riddick.

requested a copy of the plea hearing transcript. (Tr. 10:8-18). They suspended the proceedings until 4:30 p.m. for the transcript to be typed and brought to court. (Tr. 10:18-20). He recalls reading the transcript and that he explained it to Riddick. (Tr. 10:18-20). After reading the transcript, the objection was withdrawn. (Tr. 10:22-25, 11:1). In the interim between the 9:00 and the 4:30 hearing, there were other sentencings. (Tr. 11:2-7). Attorney Bailey testified that he discussed with Riddick that if the judge went between the sentencing guidelines, there were no grounds for appeal, but that if she went above the sentencing guidelines, he could appeal. (Tr. 13:10-19). Since the sentencing was within the guidelines range, there were no grounds for appeal. (Tr. 13:19-22).

Going into the sentencing, there was no agreement with the United States since Riddick did not want to cooperate and because the guideline range was specific. Bailey recalls that:

> "[w]e argued that he should get a minor role. That was denied by the court. He didn't cooperate, so there was no 5k. There was no safety valve. He refused to cooperate with the Government. So, we were left with the bottom of the guidelines and the top of the guidelines. There was no deviation." (Tr. 15:11-20).

There was some discussion with the Government in regards to cooperation and what a plea agreement would consist of if Riddick were to cooperate. (Tr. 15:21-25). Attorney Bailey understood that he would be entitled to the safety valve, but Riddick was not forthcoming with what happened in the case, contrary to what they knew. (Tr. 16: 1-7). The Defendant was ultimately sentenced to 150 months prison followed by 60 months of supervised release. USA v Riddick, 2:06-cr-33-JES-SPC, Doc. # 110.

A day after the prerequisite time for appeal, Attorney Bailey received a call from Riddick who asked him why he didn't appeal. (Tr. 14:1-3). He told Riddick that "you indicated to me, or you told me that an appeal, we would not go that route. It's now past the time, so we can't appeal." (Tr. 3-

6).  At the time Riddick entered his plea, there was no plea agreement.  (Tr. 14:9-12).  Attorney Bailey felt the case was clear against the Defendant.  He was seen on the videotape unloading a vehicle of narcotics.  Riddick indicated, "[w]ell look, I mean, there's nothing I can do.  That's me there." (Tr. 14:18-19). The tape was explicit.  Riddick was seen coming out of the vehicle, unloading the stuff along with the CI, the agents were there, and there was dialogue that went on as to what was going on in the transaction.  (Tr. 14:15-23).

When asked whether or not he had received any correspondence from Riddick immediately after the imposition of sentence requesting an appeal be filed, Attorney Bailey responded that he "can't recall that."  (Tr. 15:4-7).  He did recall, however, receiving a phone call from Riddick.  (Tr. 15:7-8). Attorney Bailey indicated, "[h]e may have written a letter or something, but I just remember offhand that he did call me, but outside of the period for appeal."  (Tr. 15:8-10).

On cross-examination, Petitioner's counsel, Mr. Curry,  questioned Attorney Bailey about a letter dated September 26, 2007.  (Tr. 28:2-8).  Attorney Bailey's recollection was that the letter was one he received from AUSA Casas prior to he and the agent going to the Wachula County Jail to get Riddick to speak to the agent about exactly what he knew about the case.[4]  (Tr. 28:9-17).

Attorney Bailey again reiterated at the hearing that the Petitioner witnessed other sentencings prior to his sentence being imposed, and told him that he would not appeal his sentence.  He believes there were two or three sentencings prior to his sentencing.  (Tr. 29: 8-12).

---

[4]It is clear from the date of the letter, Sept. 26, 2007, that it was written post-sentence and subsequent to the Defendant filing his Motion to Vacate, Set Aside, or Correct Sentence (Doc. #1) filed on July 30, 2007.

The Petitioner questioned Attorney Bailey about a letter (Petitioner's Exhibit #1) purported to be from Valdonia Riddick dated August 9, 2006.  The sentencing date according to the records was August 3, 2006.  Mr. Bailey indicated that he could not remember receiving the letter.  (Tr. 31:7-10).

**Kathy Dellane Mangone:** (Tr. 47- 50)

Kathy Dellane Mangone is a Senior Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement.  (Tr. 47:24-25).  She started her career with Customs in 1988 which subsequently became the Department of Homeland Security in 2003.  (Tr. 48:1-4).  Spec. Agt. Mangone recalls participating in the investigation regarding Riddick.  (Tr. 48:5-12).  She testified that Riddick did not express any interest in cooperating with the Government.  (Tr. 48:16-20).  She was involved at Riddick's attorneys request to travel to the Wauchula County Jail to interview/debrief Riddick enough so that he could receive the safety valve provision.  (Tr. 48:21-25, 49:1-5).  Riddick initially declined to speak with agents, however after speaking with Attorney Bailey, he spoke with them regarding his involvement in the case.  (Tr. 49:11-18).

**Valdonia Riddick**: (Tr. 50- 76)

The Petitioner testified that the Government knew more about what was happening than he did since they had been watching them for years prior to him coming into the situation.  (Tr. 52:9-15).  His understanding was that when the safety valve came up, he had to just state what he was responsible for.  (Tr. 52:16-21).  At the hearing he testified that he was never involved in any conspiracy and never knew anybody who was there.  (Tr. 52:22-24).

The Petitioner was shown a letter from Attorney Bailey to AUSA Casas (Petitioner's Exhibit #1), which he indicated he had received.  (Tr. 53:15-23).  The Petitioner testified  the letter was

mailed from the Wauchula County Jail on the same day that he wrote it, on the ninth (9th). (Tr. 54:16-25). He believes that he spoke to Attorney Bailey four or five days after the sentencing. (Tr. 56:3-9). His letter references the conversation. (Tr. 56:10-16). He indicated in his testimony that Attorney Bailey explained to him that he was going to get three to four years and that he would get the safety valve and reduction of sentence. (Tr. 56:20-25). He indicated that he "just followed him." (Tr. 57:14). He testified to the phone conversation at which time he asked Attorney Bailey "why didn't you file that appeal?" (Tr. 57:15-17).

The Petitioner was shown a letter from Attorney Bailey to AUSA Casas (Petitioner's Exhibit #2), which he testified he had received. (Tr. 58:24-25, 59:1-3). Although the letter indicates that Riddick gave Attorney Bailey no instructions to appeal, the Petitioner testified that is not the case. (Tr. 59:17-18). He was told that he would retain his right to appeal from day one. (Tr. 59:19-25, 60:1-6).

The Petitioner testified that he believed, based upon what his attorney told him, the prosecutor would ask for the low end of the guidelines. (Tr. 64:23-25). He testified that he did not wish to withdraw his plea of guilty, but that he only wants his right to appeal his sentence to a higher court. (Tr. 65:20-25).

On cross examination, AUSA Casas confronted the Petitioner about the importance of the letter that he indicates he wrote and mailed to Attorney Bailey on August 9, 2006. (Petitioner's Exhibit #1, Tr. 67:16-25). The Petitioner claimed that Attorney Bailey never informed him of his right to challenge the court's jurisdiction over his individual person. (Tr. 69:17-22). He testified that Attorney Bailey never negotiated an agreement nor got any written document to define the parameters of the agreement. (Tr. 70:12-16). He also testified that Attorney Bailey coerced him into

entering his plea. (Tr. 70:17-19).  AUSA Casas, on cross examination, challenged the timing of the letter and the fact that it was never attached to the Petitioner's original Petition.  (Tr. 71:11-14, 21-25).  He also challenged the testimony of the Petitioner that he was not involved in a conspiracy. Further, he challenged the factual basis that the Petitioner gave at the time of the plea colloquy versus the Defendant now claiming he knew nothing about a conspiracy.  (Tr. 75:24-25, 76:1-18)

## DISCUSSION

It is well settled that the Supreme Court's ruling in <u>Strickland v. Washington</u>, is the controlling legal standard for determining ineffective assistance of counsel claims. <u>Haliburton</u>, 342 F.3d at 1242. <u>Strickland</u> established a two-pronged standard to determine whether or not counsel's assistance was ineffective. 466 U.S. at 687.  First, the defendant must show that counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u>  Second, the defendant must show that counsels ineffective assistance prejudiced the defense to such a degree that the defendant was deprived of the right to a fair trial. <u>Id.</u>  The defendant must satisfy both prongs to prove ineffective assistance of counsel. <u>Id.</u>

There were two hearings held on this matter. Initially, the hearing was scheduled for April 1, 2008. The Court was called into session on April 1, 2008, however, the Respondent's witness Attorney Abe Bailey was not notified and the hearing was subsequently rescheduled for April 4, 2008.

### *The April 1, 2008, Hearing*

At the hearing held on April 1, 2008, the Petitioner requested the Court's permission to speak on the record.  The Court allowed the Petitioner to speak.  The Petitioner stated that he wanted his objections and argument placed into the record.  He argued the following : (1) he objected to the quantity of drugs as wrongly based upon an un-indictable conspiracy between himself and a federal

agent and CI.; (2) the plea agreement was based upon false information; (3) the sentencing law under which he was sentenced was unconstitutional; and (4) that his attorney failed to file a timely appeal as requested.  These issues were noted for the record and were all presented and considered at the § 2255 hearing held on April 4, 2008.

The crime of conspiracy consists of an express or implied agreement between two or more persons to commit a criminal offense. Fortner v. McNeil, 2008 WL 651810 *16 (M.D.Fla. March 10, 2008).  Initially, the Petitioner's argument is more suited for a direct appeal of his conviction which is not appropriate for a § 2255 Motion.  Further, the Petitioner's objection is without merit.  While the petitioner claims he did not know any of the co-conspirators,  he acknowledged at the plea hearing that he met with co-defendants Wedderburn, Gentry and others to discuss transporting the marijuana to the United States by boat. USA v Riddick, 2:06-cr-33-JES-SPC, Doc. # 105, 19:1-25, 20:1-11.  Considering the quantity of marijuana,  the Petitioner stated he knew the amount was in excess of 1000 kilograms when he testified regarding his responsibility during the plea colloquy. Id. at 25:4-11.  The Petitioner's remaining arguments were discussed and covered in detail at the hearing held on his Motion to Vacate pursuant to § 2255.

### The April 4, 2008, Hearing

The Petitioner raised the following grounds for alleging ineffective assistance of counsel: (1) the Petitioner was never informed the he could challenge the Court's jurisdiction over his person; (2) the Petitioner's Counsel did not negotiate a plea deal with the Government; (3) the Petitioner was coerced by his attorney to accept the plea; (4) the Petitioner states that his Counsel never researched the congressional history of the sentencing guidelines which he claims are unconstitutional; and (5) Defense Counsel did not requests a direct appeal of his sentence as directed by the Petitioner.  At the

end of the hearing the Petitioner also objected to the hearing because he was not allowed to remove his counsel, Attorney Curry, from representing him.

The Government states that it had jurisdiction over the Petitioner, there was no coercion, the Petitioner refused to cooperate so no plea agreement was reached, and the sentencing guidelines are Constitutional.  Regarding the Petitioner's claim that Attorney Bailey failed to appeal his case, the Government argues the Petitioner directed Attorney Bailey not to file an appeal.

Because the Petitioner objected to the entire proceeding based upon his request to fire Attorney Curry and represent himself, the Court will address this objection first.

*The Petitioner's Objection to the Proceedings*

At the hearing, the Petitioner requested the opportunity to address the Court. (Tr. 78:9-17).

The Petitioner then stated:

> I object to this hearing because I wasn't allowed to speak for myself at the appropriate time. Initially, I told the Court from the beginning that I wished to speak for myself because my attorney was not doing what I had instructed him to do. And that's why I wanted to speak for myself.  And that's it really. I just want to say that.

(Tr. 78:22-25, 79:1-3).  The Petitioner had expressed the desire earlier in the proceedings to cross-examine Attorney Bailey during the Government's direct examination.  In fact, he interrupted the proceedings on several occasions.  The Court inquired as to what the Petitioner felt that he was precluded from doing during the hearing. (Tr. 79:4-6).  The Petitioner stated he was not allowed to cross-examine the witnesses. (Tr. 79:7)  However, the Petitioner wanted to cross-examine Attorney Bailey after each statement as he answered the Government's direct line of questions. (Tr. 12:1-16). The Court informed the Petitioner that his attorney would have the opportunity to cross-examine

-11-

Attorney Bailey after the Government completed its direct examination and not after each question as it was asked and answered. (Tr. 12:19-25, 16:10-25, 17:1-9). After the Government's direct examination of Attorney Bailey, the Court called a recess in order to allow the Petitioner and Attorney Curry to discuss the Petitioner's notes and questions for Attorney Curry to ask during his cross-examination of Attorney Bailey. (Tr. 39:13-25, 40:1-20). While the Petitioner insisted he could do a better job representing himself, his only complaint with Attorney Curry revolved around the fact that Attorney Curry would not stop the Government's direct examination and insist on cross-examining the witness after each answer. The Court would not allow the Petitioner to cross-examine the witness after each question during direct examination. The Court suggests this is not sufficient reason for the Court to allow the Petitioner to proceed *pro se*, and therefore, the objection is overruled.

### (1) Whether the Court had Personal Jurisdiction over the Petitioner

Pursuant to 18 U.S.C. § 3231, the "district courts of the United States shall have original jurisdiction, exclusive of the States, of all offenses against the laws of the United States." Moreover, a federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law. U.S. v. Rendon, 354 F.3d 1320, 1326 (11th Cir. 2003) (citing United States v. Alvarez-Machain, 504 U.S. 655, 659-70, 112 S. Ct. 2188, 2191-97, 119 L.Ed.2d 441 (1992); United States v. Noriega, 117 F.3d 1206, 1213-14 (11th Cir.1997)).

In this case, the Petitioner was arrested in Clewiston, Florida, following the delivery of a significant amount of marijuana. Clewiston, Florida is within the geographical area comprising the Fort Myers Division of the United States District Court for the Middle District of Florida. Further, the Petitioner was indicted by a federal grand jury for federal drug violations. Clearly, the Court had

-12-

personal jurisdiction over the Petitioner.   Therefore, no grounds exist to grant the Motion based on

the failure to raise a personal jurisdiction argument.            _____

*(2) Whether the Petitioner's Attorney was Ineffective Because He did not Negotiate a Plea Deal*

The sentencing guidelines state in pertinent part:

(a) Except as provided in subsection (b), in he case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) no later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information

> shall not preclude a determination by the court that the defendant has
> complied with this requirement.

USSG § 5C1.2.

The Petitioner alleges Attorney Bailey's representation was ineffective because he never negotiated a plea deal with the Government. The Government states the Petitioner never agreed to cooperate with the United States in the prosecution of any of his Co-Defendants. Spec. Agt. Mangone testified that she went to visit the Petitioner in the Wauchula County Jail. Spec. Agt. Mangone traveled to Wauchula to interview the Petitioner to see if he qualified for the safety valve reduction. (Tr. 49:1-3). According to Spec. Agt. Mangone, the Petitioner did not want to cooperate and only provided the Government with information pertaining to his role in the case. (Tr. 49:10-18).

Attorney Bailey testified that the Petitioner did not want to negotiate a plea deal with the Government and further the Petitioner refused to see the agent who came to interview him regarding the safety valve provision. (Tr. 9:3-17). Although, Attorney Bailey did state that he believed the Petitioner did eventually agree to meet with and in fact did meet with law enforcement officials to provide a statement for safety valve purposes. (Tr. 9:18-21). However, the Petitioner did not wish to cooperate with the Government, therefore, there was no safety valve provision for him in regard to a plea deal. (Tr. 15:14-20). Attorney Bailey testified that in order to resolve the case, the Petitioner decided to plead straight up to the Court and hope to reduce the sentence to the lowest level by raising the issue of minimum responsibility. (Tr. 9: 22-25, 10:1-4).

Attorney Bailey further testified that he and AUSA Casas did discuss what representations could be made in the event the Petitioner decided to cooperate with the Government in order to get safety valve considerations. (Tr. 15:21-24). AUSA Casas explained what the plea agreement would

consist of if the Petitioner was forthcoming in the case. (Tr. 15:25, 16:1-6). The Petitioner said he did not know anything about the case and refused to be forthcoming. (Tr. 16:5-7). As a result, the Petitioner could not avail himself of the safety valve provisions because he failed to meet the cooperation element found in the guidelines under USSG § 5c1.2(a)(5).

Based upon the testimony presented at the hearing, the Court finds that the Defendant had the opportunity to participate in a plea deal with the Government but chose not to cooperate. Attorney Bailey acted in a reasonable manner and did not provide ineffective counsel. He attempted to secure a plea agreement from the Government but because the Defendant failed to fully cooperate, he was left with the option to plead straight up to the Court without a plea agreement or go to trial. Therefore, Attorney Bailey acted reasonably under the circumstances.

### (3) Whether the Petitioner was Coerced by his Attorney to Accept the Plea

The Petitioner also argues that he was coerced into entering a plea of guilty based upon the belief that if he went to trial and lost, he would receive a harsher sentence. Attorney Bailey testified that he did not coerce the Petitioner.

Because the Petitioner's conviction is final, the Petitioner "may challenge only the knowing and voluntary nature of his plea, unless the record demonstrates that the district court lacked the power to enter the conviction or impose the sentence." Campas v. U.S., 2006 WL 2189989 *4 (M.D.Fla. August 1, 2006); U. S. v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989); U.S. v. Kaiser, 893 F.2d 1300 (11th Cir.1990). However, "[i]t is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked ...." Campas, 2006 WL 2189989 at *4 (citing Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). Moreover, the Petitioner is barred from

raising a challenge to the factual basis of his plea in his motion to vacate. <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir.1992). In the context of a 2255 motion to vacate, a defendant who enters a guilty plea waives all non-jurisdictional challenges to the Constitutionality of the conviction, and can only attack the voluntary and knowing nature of the plea. <u>Campas</u>, 2006 WL 2189989 at *4 (citing <u>Wilson v. United States</u>, 962 F.2d at 997).

At his change of plea hearing held on March 28, 2006, the Petitioner was asked if anyone had promised him anything in return for his plea or if anyone had coerced him into pleading guilty. <u>USA v Riddick</u>, 2:06-cr-33-JES-SPC, Doc. # 105, 6:3-5. The Petitioner answered "[n]o, your Honor." <u>Id</u>. at 6:6). Thus, the Petitioner's claim that he was coerced into a guilty plea has no merit.

The Petitioner argued that Attorney Bailey informed him that he would only serve a few years for his involvement in the crimes he was accused of in the superceding indictment. However, contrary to the Petitioner's claims the severity of the potential penalty for the charges to which he was pleading guilty were clearly explained to him during his plea colloquy. The Court gave the Petitioner a detailed description of the possible sentences along with the fact that the Court could not impose a sentence less than recommended by the guidelines.

The Court stated "[n]ow, Counts 1, 2, and 3 each carry a minimum mandatory sentence of not less than ten years up to life incarceration without parole, a fine of up to $4 million, a period of supervised released of at least five years up to life, and a special assessment of $100. Do you understand those potential penalties for these charges?" <u>Id</u>. at 8:2-8. The Petitioner replied "[y]es your Honor." <u>Id</u>. at 8:9. The Court informed the Petitioner "you understand that there are a number of counts, so that the Court, at the time of sentencing could actually run those counts consecutive, meaning one after the other?" <u>Id</u>. at 8:10-13. Again the Petitioner replied "[y]es your, Honor." <u>Id</u>.

at 8:14.  The Court continued "if [Attorney Bailey] has given you predictions as to where he believes you might fall on your case on the guidelines, and he is not correct, do you understand you're not going to be able to withdraw your plea? <u>Id.</u> at 10:4-7. The Petitioner responded "[u]nderstood, your Honor." <u>Id.</u> at 10:8.  The Petitioner was further asked "[d]o you understand that, after it has been determined what guidelines range applies to your case, that the Court [has] the authority, under limited circumstances, to impose a sentence that's either more or less severe than that called for in the guidelines?" <u>Id.</u> at 10:15-19.  The petitioner answered "[y]es, your Honor." <u>Id.</u> at 10:20.  After detailing the potential sentences the Petitioner might face and the nature of the consequences of his guilty plea, the Court asked the Petitioner "[d]o you understand the possible penalties which apply if you enter a plea of guilty to these charges, Mr. Riddick?" <u>Id.</u> at 12:12-14.  The Petitioner answered "[y]es your Honor." <u>Id.</u> at  10:15.

The Petitioner was clearly informed of the counts against him and the consequences of his entering a guilty plea regarding the sentence and subsequent prison time he might receive.  Thus, the Petitioner's claim that he was not informed that his guilty plea might result in a long-term incarceration is without merit.

The Petitioner was then given the opportunity to detail his factual involvement in the crime. <u>Id.</u> at 18:4-.25:1-23.  The Petitioner then entered a plea of guilty to each of the three counts against him.  After he had entered his guilty plea, the Court inquired of the Petitioner if he was "knowingly and voluntarily entering a plea of guilty to Counts 1, 2, and 3 of the superceding indictment?" <u>Id.</u> at 27:7-9.  The Petitioner responded "[y]es, your Honor." <u>Id.</u> at 27:10.  The Court then stated "I do determine that your plea of guilty is knowingly, voluntarily and intelligently made, and that it's not the result of any threats or promises that were made to you." <u>Id.</u> at 27:11-14.  Thus, the Petitioner's

claim that he was not provided with sufficient information and/or coerced into a guilty plea has no merit.

### (4) Whether the Petitioner had Ineffective Counsel Because He did not Challenge the Sentencing Guidelines

The Petitioner argues that the Sentencing Guidelines are unconstitutional because Congress attached the guidelines to an appropriations bill which cannot last more than a year.   The Petitioners claim is without merit.  Enabling legislation for the guidelines was presented to and signed by the President, therefore, the Courts have found that the guidelines are constitutional. U.S. v. Zapata-Alvarez, 911 F. 2d 1025, 1026 (5th Cir. 1990) (citing U.S. v Barnard, 887 F. 2d 841, 842 (8th Cir. 1989)).

### (5) Whether the Defense Counsel Failed to Appeal the Sentence as Directed by the Defendant

In a criminal case, a defendant's notice of appeal must be filed in the district court within ten (10) days after the later of the entry of either the judgment or the order being appealed.  Fed. R. App. P. 4(b)(1).  It is a well settled principle that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professional unreasonably manner *per se*. Gomez-Diaz v.U.S., 433 F.3d 788, 791-792 (11th Cir. 2005).  Even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. Id. at 792.

The Petitioner states Attorney Bailey failed to file an appeal of his sentence as instructed. Attorney Bailey states the Petitioner said he did not want to file an appeal.  Because there are conflicts in the testimony of the Petitioner and Attorney Bailey,  the Court must first perform a

credibility analysis before proceeding any further.  When weighing the credibility of a witness, the Court does not look at the status of the witness, but rather the Court must weigh the testimonies of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand, and the witnesses' interest in the outcome of the hearing.  U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (11th Cir. 2002).

Attorney Bailey discussed with Riddick that if the judge went between the sentencing guidelines, there were no grounds for appeal, but that if she went above the sentencing guidelines, he could appeal.  (Tr. 13:10-19).  Since the sentencing was within the guidelines range, there were no grounds for appeal.  (Tr. 13:19-22).  Attorney Bailey testified that the Petitioner instructed him not to file an appeal, after he witnessed another sentencing, just prior to his own sentencing and said "I don't want to appeal." (Tr. 29: 8-12).

The Petitioner states that he requested  Attorney Bailey to file his appeal.  The Petitioner believes that he spoke to Attorney Bailey four or five days after the sentencing. (Tr. 56:3-9).  In fact, the Petitioner called Attorney Bailey and inquired why he had not appealed his sentence. (Tr. 15:7-8).  Attorney Bailey does not contest the phone call, but asserts that the phone call came the day after the time for the Petitioner to file his appeal had expired. (Tr. 15:8-10).  In support of the Petitioner's position, he filed a copy of a letter purportedly written on August 9, 2006, requesting that Attorney Bailey file an appeal. (Petitioner's  Ex. 1).  Attorney Bailey testified on cross examination he did not recall ever seeing the letter. (Tr. 15:4-7).

In the §2255 hearing, the Petitioner denied knowing any of the other participants involved in the narcotics scheme.  Therefore, he claims there could not have been a conspiracy.  The Petitioner says he only casually knew Co-conspirator Andrew Wedderburn. (Tr. 73:8-14).  He further stated

that he did not conspire with Wedderburn to transport marijuana from Jamaica to the United States. (Tr. 73:15-24).  The Petitioner was asked if he was involved with Oak Gentry to arrange for the purchase of a vessel to transport marijuana from Jamaica to the United States. (Tr. 74:6-20). The Petitioner stated he gave money to Gentry because Wedderburn said he was sick and needed help. (Tr. 74:15-25).

In contrast to his testimony at this hearing, the Petitioner testified under oath during his plea on March 28, 2006, that he met with both Wedderburn and Gentry to discuss the transportation of marijuana to the United States in 2003. Riddick, 2:06-cr-33-JES-SPC at 19:3-16.  Riddick explained that the marijuana to be transported belonged to Wedderburn and that he gave Gentry money to buy a boat to transport the marijuana to the United States. Id. at 20:8-25, 21:1-22.  When asked about his contradictory responses at the plea,  he stated he did not recollect making any statements at the plea colloquy that contradicted his testimony during the instant hearing. (Tr. 76:6-18).

Regarding the letter written by the Petitioner and allegedly mailed on August 9, 2006, Attorney Bailey testified that he never recalled seeing that letter. (Petitioner's Exhibit #2) Furthermore, when the Petitioner filed his initial Motion to Vacate, the letter was not attached as an exhibit. (Tr. 70: 8-12).  When AUSA Casas inquired about why the Petitioner did not attach the letter asking for an appeal to his original Petition, the Petitioner stated that the letter "came in a visitation traverse, so that's how it reached you." (Tr. 71:13-14).  AUSA Casas continued "so the most important letter for your claim here today you didn't feel was necessary to attach to your original claim?" (Tr. 71:21-23).  The Petitioner then stated that his original petition was filed to object to the whole proceeding including that his conviction was a sham. (Tr. 71:24-25, 72:1).  The Petitioner then stated he put in a footnote in the first petition stating that  Attorney Bailey failed to

appeal his sentence. (Tr. 72:2-5).  AUSA Casas then questioned the Petitioner why he didn't produce this very important letter during his second "special visitation traverse . . ." (Tr. 72:6-7).  The Petitioner  did not answer the question but referred to showing a modus operandi on the part of Attorney Bailey. (Tr. 72:8-10).  His answers regarding why he did not attach the letter to his first Petition were clearly evasive and unresponsive, which is a strong indication to the Court that the Petitioner is being less than forthright regarding when he wrote the letter.

After viewing the Petitioner's demeanor in the courtroom, and after reviewing the numerous contradictions between his sworn testimony during his plea colloquy and his statements during the instant hearing, the Court finds that the Petitioner's testimony is simply not credible.  In contrast, the testimony of Attorney Bailey was credible.

Having found the testimony of Attorney Bailey to be  more credible, the Court finds that the Petitioner indeed told Attorney Bailey not to file an appeal, and the date and circumstances surrounding the letter are questionable.  As such, Attorney Bailey acted as a reasonable lawyer in the same or similar circumstances when he failed to file an appeal of the Riddick's sentence.  Thus, there is no good cause to find that Attorney Bailey's counsel was ineffective in this case.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. #1) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this ___9th___ day of May, 2008.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record